IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


LONNIE JOHNSON                                                                              PLAINTIFF

           v.                           Civil No. 4:11-cv-04099

SHERIFF MONTE STRINGFELLOW;
DR. DEVLIN, Jail Doctor, Sevier
County Jail; and MS. SHARON,
Head Jailer, Sevier County Jail                                                             DEFENDANTS


**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Lonnie Johnson filed this civil rights case pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation. Defendants requested a jury trial in this matter.

Currently before the Court is Defendants' Motion for Summary Judgment. ECF No. 29. Plaintiff filed a Response to Defendants' Motion For Summary Judgment. ECF No. 33. Plaintiff then filed a second Response to Defendants' Motion for Summary Judgment. ECF No. 34. Defendants filed a Reply. ECF No. 35. Plaintiff then filed a Response to Reply Brief in Support of Motion for Summary Judgment by Defendants. ECF No. 36. Plaintiff then filed a Notice requesting the assistance of the Court, in the form of a questionnaire, in responding to Defendants' Motion for Summary Judgment. ECF No. 37. The Court prepared a questionnaire for Plaintiff. ECF No. 38. Plaintiff then filed the completed questionnaire as another Response to Defendants' Motion for Summary Judgment. ECF No. 39. Defendants then filed a Sur-Reply Brief in Support

1

of Motion for Summary Judgment. ECF No. 40. Plaintiff filed a Supplement to his Response to Defendants Motion for Summary Judgment. ECF No. 41.[1] Plaintiff then filed a Response to Sur-Reply Brief in Support of Motion for Summary Judgment by Defendants. ECF No. 45. After considering all of the briefing, the undersigned makes the following Report and Recommendation.

**I.     BACKGROUND**

The events that are the subject of this lawsuit occurred while Plaintiff was housed in the Sevier County Detention Center ("SCDC"). Plaintiff claims in his Complaint that Defendants Sharon Harned and Dr. Devlin denied him medical care.

On November 15, 2011, Plaintiff filed his first Supplement to his Complaint. ECF No. 5. In this Supplement, Plaintiff claims: (1) his grievances are going unanswered; (2) his blood pressure is getting worse and the medication "they" give him is not working; (3) "they" are not checking his blood pressure as often as the nurse suggest even though he complains of pain in his chest and arm; (4) no test have been done on him; (5) he saw the doctor once at the jail where she only took his vitals; (6) he is in pain. ECF No. 5, p. 1.

On December 7, 2011, Plaintiff filed his second Supplement to his Complaint. ECF No. 6. In this Supplement, Plaintiff claims (1) he is on medical watch; (2) his blood pressure is still very high; (3) "they" bring his medication and check his blood pressure twice a day; (4) he still has not had any test done; (5) he still has not seen the doctor; (6) on an unspecified date he experienced chest pains and numbness in his arm and it took the jailers one hour to respond to his request for help; and (7) the jail administrator denied him copies of his blood pressure readings.

---

[1] The Court notes this document is docketed as a Supplement to Complaint, however, the substance of the document indicates it is a supplement to Plaintiff's Response to Defendants' Motion for Summary Judgment at ECF No. 39 and will be construed by the Court as such.

ECF No. 6, pp. 1-2.

On December 19, 2011, Plaintiff filed a Court prepared addendum to his Complaint. ECF No. 8. In this Addendum Plaintiff claims: (1) a custom, policy, or practice of the SCDC was the moving force behind the violation of his constitutional rights; and (2) he intends to also sue Defendants in their individual capacities. ECF No. 8, pp. 1-2.

On December 19, 2011, Plaintiff also filed a third Supplement to his Complaint. ECF No. 9. In this Supplement, Plaintiff claims he was denied medical care on December 13, 2011 for his high blood pressure. ECF No. 9, p. 1.

On January 18, 2012, Plaintiff filed a fourth Supplement to his Complaint. ECF No. 10. In this Supplement, Plaintiff claims his medicine dosage has gone from 12 milligrams of "Captiprol" twice a day to 100 milligrams of "Captiprol" twice a day but his blood pressure is still high. ECF No. 10, p. 1.

On January 24, 2012, Plaintiff filed a fifth Supplement to his Complaint. ECF No. 11. In this Supplement, Plaintiff claims: (1) he was denied pain medication on January 18, 2012; (2) his request for medical care are still being denied; (3) his health is declining; (4) he is in constant pain; (5) he cannot sleep; and (6) there is a constant ringing in his ears. ECF No. 11, p. 1.

On May 3, 2012, Plaintiff filed a sixth Supplement to his Complaint. ECF No. 13. Plaintiff did not provide any additional claims or facts in the sixth Supplement.

## II.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the

disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.   DISCUSSION

Defendants argue in their Motion for Summary Judgment: (1) Plaintiff was not denied medical care; (2) Defendants were not deliberately indifferent to Plaintiff in any delay of his medical care; (3) a difference of medical opinion does not state a cognizable claim under section 1983; (4) Defendant Harned did not violate Plaintiff's constitutional rights; (5) Defendant Stringfellow did not violate Plaintiff's constitutional rights; (6) Plaintiff failed to state a policy or custom of Sevier County that was the moving force behind his alleged constitutional violation; and (7) Defendants' are entitled to qualified immunity.

The Court notes that the parties filed multiple responses and replies to Defendants' Motion for Summary Judgment (ECF Nos. 30, 34, 35, 36, 39, 41, & 45). Rather than painstakingly

enumerate the arguments raised and rehashed in each of these filings, the Court will simply state the pertinent facts and arguments as they apply to each issue before the Court.

    1.    <u>Official Capacity Claims</u>

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). An official capacity claim against Defendants is essentially a claim against Sevier County. Plaintiff explained the policy of Sevier County that he believes violated his constitutional rights as:

> I wasn't seen by any medical personnel for 19 days. When I was booked in I stated my medical Problems notified them that I was on Medication. Filed out a Medical questionaire It wasn't policy or procedure it was 'Fact' that for weeks knowing I was on Medication (Diabedic/High Blood Pressure) I recieved no medication nor did I see a doctor.

ECF No. 39, pp. 11-12 (errors in the original).

"[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims

a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997). There are no facts or allegations in Plaintiff's Complaint or his responses to support an official capacity claim against Defendants. Plaintiff did not present any facts showing a policy or custom of the SCDC caused his medication to be denied or delayed. Further, Plaintiff himself states in his explanation of his official capacity claim that the denial of his medication was not the result of a policy or procedure. ECF No. 39, p. 11.

Additionally, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). In other words, Sevier County cannot be held liable based merely on the fact it employs Defendants. Therefore, there are no genuine issues of material fact regarding Plaintiff's official capacity claims and these claims fail as a matter of law.

    2.    <u>Medical Care Claims</u>

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132

F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require

jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

      a.    *Blood Pressure*

Defendants argue Plaintiff was not denied medical care regarding his blood pressure, and any delay in his medical care does not amount to deliberate indifference because Plaintiff has failed to produce verifying medical evidence of a lasting negative effect of the delay.

The record indicates Plaintiff was booked into the SCDC on August 20, 2011. ECF No. 31, p. 1. Plaintiff was transferred to Faulkner County Detention Center (nonparty) approximately two weeks later and then released. ECF No. 31, p. 1. Plaintiff's blood pressure was high at the time he was transferred to Faulkner County Detention Center. ECF No. 39, p. 3. Plaintiff did not request any medical treatment while incarcerated in the SCDC in August 2011. ECF No. 31, p. 1. Plaintiff was booked back into the SCDC on September 19, 2011. Plaintiff was examined by Dr. Devlin on September 30, 2011. ECF No. 39, p. 3. Dr. Devlin prescribed Plaintiff medication to treat his high blood pressure at this time. ECF No. 39, p. 6. Dr. Devlin's nurse and jail staff

checked Plaintiff's blood pressure and blood sugar on a regular basis, and Dr. Devlin monitored Plaintiff's blood pressure and blood sugar through the logs provided to her by her nurse and the jail staff. ECF No. 39, p. 8. Dr. Devlin also increased Plaintiff's blood pressure medications on numerous occasions over his incarceration at the SCDC. ECF No. 39, p. 9.

Plaintiff admits he disagrees with Dr. Devlin's treatment. Plaintiff stated in his Response: "I should have been taking Insulin. The Blood Pressure Medications were inadequate. I think there should have been a Medical Examintion and Blood work (LAB)." ECF No. 39, p. 9 (errors in original). Plaintiff also admits he refused medication "a couple of times" because the jailers dissolved it in water and Plaintiff was unaware of what he was taking. ECF No. 39, p. 10.

As the record indicates, Plaintiff was not denied medical care for his blood pressure. Instead, Plaintiff merely disagreed with Dr. Devlin's chosen course of treatment for his blood pressure. Mere disagreement with treatment fails to state a claim of deliberate indifference. *See Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (an inmate has no constitutional right to a particular course of treatment, and his mere disagreement with the medical treatment he receives is not a basis for section 1983 liability); *Pietrafeso v. Lawrence County, S.D.*, 452 F.3d 978, 983 (8th Cir.2006) (showing of deliberate indifference is greater than even gross negligence and requires more than mere disagreement with treatment decisions); *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir.1995) (claims that prison doctor refused to provide the same medication as the inmate's free world doctor prescribed amounted to nothing more than a disagreement as to the proper course of treatment which is not actionable under the Eighth Amendment).

Accordingly, there are no genuine issues of material fact as to whether Plaintiff was denied

medical care regarding his blood pressure, and this claim fails as a matter of law.

Further, in his Complaint, Plaintiff alleges he was denied medical care for thirty (30) days. As established above, Plaintiff was not denied medical care, and therefore, his claim can only be construed as one of delay of medical care. Defendants argue Plaintiff must place verifying medical evidence into the record to establish the detrimental effect of the delay in medical treatment in order to succeed on this claim.

Defendants are correct that to succeed on a delay of medical care claim, Plaintiff must show the objective seriousness of the delay in treatment by showing the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Plaintiff swears under penalty of perjury, in his Response, that his medical records at the ADC will show that his kidneys are weakening, he has abnormal EKG results, and now has to carry nitroglycerin with him. ECF No. 39, pp. 9-10. Plaintiff also swears under penalty of perjury, in his Response, he did not have any of these problems prior to his incarceration in the SCDC. ECF No. 39, p. 10. Additionally, Plaintiff swears under penalty of perjury that he currently takes several high blood pressure medications and two shots of insulin each day at the ADC. In further Responses, Plaintiff alleges these medical problems are a result of the delay in treatment at the SCDC.

In multiple Responses, Plaintiff acknowledges that he has not submitted verifying medical evidence in support of his delay of medical care claim. However, Plaintiff request the Court obtain his records from the ADC that will serve as the needed verifying medical evidence.[2] ECF Nos. 34-

---

[2] The Court was unaware of these requests as they were buried within Plaintiff's responses to Defendants' Motion for Summary Judgment. Now that the Court is aware of the requests it will address them by separate Order.

36. Plaintiff also reviewed his ADC records and submitted two pages he copied from the records indicating his kidneys are functioning at approximately half capacity and also including a "Diabetic Flow Chart" from 2012 when Plaintiff entered the ADC. ECF No. 41. Based on Plaintiff's sworn Response that there are records to support his allegation that he is suffering a negative prognosis due to his delay of treatment at the SCDC and his attempt to obtain the records to support this allegation, the Court cannot dismiss the delay of medical care claim at this stage. *See e.g., Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990) (the court noted it was particularly troubled by the district court's dismissal of the plaintiff's Eighth Amendment claims at summary judgment in the absence of the inmate's medical records on the record as well as the lack of evidence of the appropriate medical standard of care applying to the plaintiff's medical or psychiatric issues). For this reason, the Court finds there are genuine issues of material fact as to Plaintiff's delay of medical care claim against Dr. Devlin regarding his blood pressure treatment.

      b.    *Diabetes*

Defendants argue Plaintiff was not denied medical care regarding his diabetes. Defendants do not allege diabetes is not a serious medical condition, but instead assert Dr. Devlin was not deliberately indifferent to Plaintiff's diabetes because she monitored his blood sugar and did not believe Plaintiff suffered from diabetes while incarcerated at the SCDC. ECF No. 31-2. Dr. Devlin swears in her affidavit that she treated Plaintiff appropriately given her expert medical opinion that his blood sugar readings did not qualify him for a diagnosis of diabetes. ECF No. 31-2.

While the Court recognizes that mere disagreement with a jail doctor's treatment is insufficient to state a cognizable claim under section 1983, issues of fact exist when there is a

11

question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990) (holding the district court erred in finding mere proof of medical care by a doctor sufficed to disprove deliberate indifference). Additionally, "whether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is a factual question . . . ." *Id.*

The record indicates Plaintiff was diagnosed as diabetic and prescribed insulin prior to incarceration in the SCDC. ECF No. 34. Additionally, Plaintiff indicated on his SCDC intake forms (in both August and July) that he was diabetic. ECF No. 34-1. Plaintiff also made continued requests for care of his diabetes through medical request to the SCDC. ECF No. 33. Dr. Devlin did order Plaintiff's blood sugar checked regularly, but never prescribed Plaintiff any treatment for diabetes because she did not believe treatment was warranted. ECF No. 31-2. Lastly, Plaintiff swears under penalty of perjury that once he was transferred to the ADC he was again placed on insulin for his diabetes. ECF No. 39, p. 10.[3]

Given the current record, the Court finds there is a question of fact as to whether Dr. Devlin's treatment decisions, regarding Plaintiff's alleged diabetes, fell so far below the reasonable standard of care as to constitute deliberate indifference. For this reason, the Court finds there are genuine issues of material fact as to Plaintiff's denial of medical care claim against Dr. Devlin regarding his diabetes treatment.

3.     Sheriff Stringfellow

---

[3] The Court again acknowledges that the records from the ADC may shed considerable light on the issues before the Court.

Plaintiff claims Sheriff Stringfellow violated his constitutional rights by denying him medical care and ignoring his grievances. Defendants argue Sheriff Stringfellow had no personal involvement in Plaintiff's medical care and Plaintiff is not entitled to responses to his grievances.

Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). *See Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir.1997) (no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment). Further, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper*, 130 F.3d at 1314 ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)). In other words, Sheriff Stringfellow cannot be held liable merely because he holds a supervisory position at the SCDC.

Plaintiff has failed to allege Sheriff Stringfellow had any personal involvement in Plaintiff's

13

medical treatment, much less that Sheriff Stringfellow intentionally interfered with any prescribed treatment. Sheriff Stringfellow is not a medical professional and any liability Plaintiff alleges on his behalf would be based on a *respondeat superior* theory of liability. Accordingly, Plaintiff's denial of medical care claims against Sheriff Stringfellow fail as a matter of law. *See e.g. Cotton v. Hutto,* 577 F.2d 453, 455 (8th Cir. 1978).

The crux of Plaintiff's complaint against Sheriff Stringfellow is that Sheriff Stringfellow failed to answer Plaintiff's grievances and request for medical treatment. ECF No. 39, p.11. Plaintiff does not have an independent constitutional right to a grievance procedure. *See Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002) (quoting *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993)). A jails failure to process an inmate's grievances, without more, is not actionable under Section 1983. *Buckley,* 997 F.2d at 495. Therefore, Plaintiff has failed to state a cognizable claim under Section 1983 regarding Sheriff Stringfellow's failure to answer his grievances.

4.  Sharon Harned

Plaintiff claims Defendant Harned violated his constitutional rights when she walked away from him while he was laying on the floor asking for medical attention, specifically asking for medication. Defendants first argue that Plaintiff's allegation of one instance of denial of medication by Defendant Harned does not amount to deliberate indifference. In a subsequent Reply, Defendants argue that Plaintiff was not denied medical care by Defendant Harned and his claim can only be considered a delay of medical care claim because Plaintiff eventually saw Dr. Devlin and received his blood pressure medicine. Further, Defendants argue Plaintiff must show the objective seriousness of the delay in treatment by showing the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th

Cir. 2005).

The record indicates on some date before Plaintiff was examined by Dr. Devlin and prescribed medication, Plaintiff was dizzy and weak and asked Defendant Harned for medication while laying on the floor of the SCDC. ECF No. 39, pp. 10-11. Defendant Harned walked away from Plaintiff, and Plaintiff did not receive any medication until after he saw Dr. Devlin on September 30, 2011. Plaintiff admits that he was not harmed by Defendant Harned's actions. ECF No. 39, pp. 10-11.

The Court agrees that Plaintiff's claim against Defendant Harned is one of delay of medical care because Plaintiff was requesting medication and once he was examined by Dr. Devlin he received his medication. The Court also recognizes that Plaintiff has sworn under penalty of perjury that his medical records from the ADC will show he suffered harm as a result of the delay and denial in receiving his medication at the SCDC. For this reason, the Court recommended above Plaintiff's delay of medical care claims against Dr. Devlin survive summary judgment. Plaintiff's claims against Defendant Harned, however, are distinguishable from those against Dr. Devlin. Most notably Plaintiff has sworn under penalty of perjury that Defendant Harned's single action did not harm him. ECF No. 39, p. 11. Therefore, a review Plaintiff's medical records from the ADC with regards to Plaintiff's claims against Defendant Harned would not be instructive in this matter. See *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Accordingly, the Court finds there are no genuine issues of material fact regarding Plaintiff's claim of delay of medical care against Defendant Harned.

    5.    <u>Qualified Immunity</u>

Defendants also argue they are entitled to summary judgment based on the doctrine of

qualified immunity. As Dr. Devlin is the only Defendant the Court recommends remain in this suit, the issue of qualified immunity need only be addressed as to her.

"Qualified immunity shields government officials from liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McCaster v. Clausen,* 684 F.3d 740, 746 (8th Cir. 2012). To rebut Defendant's qualified immunity assertion, Plaintiff must show a genuine issue of fact exists as to whether Defendant violated clearly established law. *Chambers v. Pennycook,* 641 F.3d 989, 904 (8th Cir. 2011) (citing *Johnson v. Fankell,* 520 U.S. 911, 915 (1997)). To determine whether Dr. Devlin is entitled to qualified immunity, the Court must (1) first examine "whether the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that her actions were unlawful." *McCaster,* 684 F.3d at 746.

The Eighth Circuit Court of Appeals recognizes that it is well established that deliberate indifference to an inmate's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment. *Id.* (citing *Nelson v. Corr. Med. Servs.,* 583 F.3d 522, 531-32 (8th Cir. 2009)). Therefore, the constitutional right at issue here was clearly established at the time the alleged delay and denial of medical care occurred. Further, as explained above the Court finds genuine issues of material fact as to whether Dr. Devlin was deliberately indifferent in delaying Plaintiff's medical care related to his blood pressure and also in denying treatment regarding Plaintiff's alleged diabetes. Taking the facts in the light most favorable to Plaintiff, the Court finds the record could support a finding that Dr. Devlin was deliberately indifferent to Plaintiff's medical

needs. Accordingly, Dr. Devlin is not entitled to qualified immunity.

## IV. CONCLUSION

Accordingly, I recommend Defendants' Motion for Summary Judgment (ECF No. 29) be **GRANTED** in part and **DENIED** in part. Specifically, it should be **GRANTED** as to Plaintiff's (1) official capacity claims against all Defendants; (2) individual capacity claim against Dr. Devlin for denial of medical care regarding Plaintiff's blood pressure; (3) individual capacity claims against Sheriff Monte Stringfellow; (4) individual capacity claims against Sharon Harned. Further, it should be **DENIED** as to Plaintiff's (1) individual capacity claim against Dr. Devlin for delay of medical care regarding Plaintiff's blood pressure; and (2) individual capacity claim against Dr. Devlin for denial of medical care regarding Plaintiff's alleged diabetes. Defendants Stringfellow and Harned should be dismissed with prejudice from this action. This leaves for later resolution the remaining individual capacity claims against Defendant Devlin

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **14th day of August 2013.**

        /s/ Barry A. Bryant
        HON. BARRY A. BRYANT
        UNITED STATES MAGISTRATE JUDGE